## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     **Plaintiff,**<br><br>   **v.**<br><br>SYED ARHAM ARBAB, ARTIS PROFICIO CAPITAL INVESTMENTS, LLC, and ARTIS PROFICIO CAPITAL MANAGEMENT, LLC,<br><br>     **Defendants.** | **Civil Action File No.** |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission" or "SEC"), alleges the following:

### OVERVIEW

1.    This matter involves an ongoing Ponzi scheme and offering fraud by Syed Arham Arbab ("Arbab"), a former student at the University of Georgia ("UGA"), and two entities under his operation and control, Defendants Artis Proficio Capital Investments, LLC ("APCI") and Artis Proficio Capital Management, LLC ("APCM").

2.     Between at least May 2018 and as recently as May 17, 2019 ("Relevant Period"), Arbab, acting individually or through APCI and APCM, offered and sold investments in a purported hedge fund, called Artis Proficio Capital (the "Fund"), which Arbab claims to manage.  He promised very high rates of return, and sent investors account updates purporting to substantiate those claims.  Arbab also offered and sold certain "bond agreements," which function like promissory notes.

3.     During the Relevant Period, Arbab received at least $269,000 from no fewer than 8 investors.

4.     Arbab's investments were fraudulent, however.  He enticed investors through multiple misrepresentations and omissions of material fact.  In fact, no hedge fund existed, the claimed performance returns were fictitious, and Arbab never invested the funds as he represented.

5.     Instead, as money was raised, Arbab placed substantial portions in his personal bank account, which he then used for his own benefit, and into his personal brokerage accounts.

6.     In addition, Arbab used some portion of newly-invested funds to pay back earlier investors who sought redemptions.

7.     Emergency relief is critical in this case.  Arbab has continued to solicit additional money from his victims – as recently as May 17, 2019 – even after becoming aware of the SEC's investigation.

-2-

## VIOLATIONS

8.     The Defendants have engaged in acts or practices that violated Sections

17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15

U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  In addition,

Arbab has engaged in acts or practices that violated Sections 206(1), (2) and (4) of

the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1), (2)

and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 240.206(4)-8].  Unless

restrained and enjoined by this Court, Defendants will continue to engage in acts

and practices that violate these provisions.

## JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to Sections 20 and 22 of the

Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21(d) and 21(e) of the Exchange

Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Sections 209(d) and 209(e) of the

Advisers Act [15 U.S.C. §§ 80b-9(b) and (d)] to enjoin Defendants from engaging in

the transactions, acts, practices, and courses of business alleged in this complaint,

and transactions, acts, practices, and courses of business of similar purport and

object, for civil penalties, and for other equitable relief.

10.   This Court has jurisdiction over this action pursuant to Section 22 of the

Securities Act [15 U.S.C. § 77v], Sections 21(d), 21(e), and 27 of the Exchange Act

[15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14(a)].

11.   Defendants, directly and indirectly, made use of the mails, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

12.   Venue is proper in this Court because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Middle District of Georgia and Defendants reside in this district.

## THE DEFENDANTS

13.   Syed Arham Arbab, age 22 and a resident of Athens, Georgia, describes himself as the Fund's "Partner" and "Chief Investment and Financial Officer."  He currently resides in a fraternity house in Athens, from which he purports to manage the Fund.  Arbab is not registered with the Commission in any capacity.

14.   Artis Proficio Capital Investments, LLC, is a Georgia limited liability company organized by Arbab in October 2018 and subsequently dissolved by the State of Georgia in April 2019.  APCI had its principal place of business at 558 W. Broad Street, Athens, GA 30601.  From approximately January 2019 onward, Arbab used a bank account in APCI's name to receive, and then divert for his own use, investor funds.  APCI is also the party to the bond agreements with investors.

On information and belief, Arbab was at all times the sole owner and operator of APCI and controls that entity. APCI is not registered with the Commission in any capacity.

15.     Artis Proficio Capital Management, LLC, is a Georgia limited liability company that a consultant, hired by Arbab, organized in February 2019. Arbab later took over as the registered agent for APCM in April 2019. APCM has its principal place of business at 558 W. Broad Street, Athens, GA 30601. Like APCI, Arbab used a bank account in APCM's name to receive, and divert for his own use, investor funds. On information belief, since at least April 2019, Arbab has been the sole owner and operator of APCM and controls that entity. APCM is not registered with the Commission in any capacity.

**RELATED ENTITY**

16.   Artis Proficio Capital is the name of Arbab's purported hedge fund. No such entity has been organized as a corporate business registered with Georgia's Secretary of State, nor is any entity by that name registered with the Commission in any capacity. Arbab told investors that the Fund's custodian was Merrill Lynch; Merrill Lynch, however, has no client by that name and has no relationship with Arbab, APCI or APCM. In documents provided to certain investors, Arbab identified himself as the Fund's "investment adviser." On a public website (http://artisproficiocapital.com/) to which he directed investors and potential

investors, Arbab described the Fund as "an investment vehicle that aims to derive returns independent from the direction of the global markets . . . [and] . . . pursues the attainment of its investment objectives through one initial channel, investment in Exchange Traded Funds ("ETFs") including other Standard & Poors Depository Receipts ("Spiders")."

## THE FRAUDULENT SCHEME

<u>Arbab's Offering of the Fund and Bond Agreements</u>

17.   In May 2018, Arbab began soliciting investors for investments in the Fund, which he told investors he managed and controlled.

18.   Arbab represented to investors that he had already finished his undergraduate degree and was working on a master's degree in business administration ("MBA") from UGA.

19.   In soliciting investors, Arbab generally targeted individuals associated with UGA and earlier friends and associates.

20.   In text messages and emails to investors and potential investors, he made multiple representations about the Fund, including (i) his "firm" was "different because we target young investors/college kids;" (ii) money invested in the Fund was "GUARANTEED and backed up to 15,000$;" (iii) the Fund had earned annual returns that he variously described as ranging between 22 to 56 percent; (iv) the Fund would have lower costs than most other hedge funds because Arbab

would not take any percentage of the initial investment and would only take "15%

off [an investor's] capital gains after calculating taxes;" and (v) investors could

withdraw their money with two weeks advance notice.

21.   Arbab sometimes instructed investors to wire money to various bank

accounts.  He also sometimes instructed investors to send funds to him via

smartphone applications such as Zelle, Venmo or Cash App.

22.   Once an investor placed money in the Fund, Arbab usually provided the

investor with an individualized log-in profile on the Fund's website through which

the investor could view his or her initial investment, current investment balance,

and supposed "total growth" return.

23.   Arbab sent each investor via text message or email a weekly spreadsheet

listing the Fund's total number of investors (identified by ID number only), their

invested amounts, and each investor's individual weekly returns (the "weekly

spreadsheet").  Arbab used the weekly spreadsheet to tout the Fund's performance

and solicit additional investments in the Fund.

24.   At one point, the weekly spreadsheet Arbab circulated to investors grew to

list more than 110 investor accounts.

25.   In some instances, Arbab contacted existing investors to encourage them

to invest more money by claiming that there were short-term opportunities in

particular stocks, such as Amazon or Tesla, to gain large returns.

26. While most Fund investors believed they were investing in the Fund, Arbab solicited certain investors to invest in what he called "bond agreements" with APCI.

27. Arbab represented to these investors that the bond agreements were short-term investments for which they would earn a fixed rate of return that varied per investor. In at least one instance, a bond agreement investor also received an additional flat fee.

28. He also represented to those investors that, unlike investments in the Fund, the proceeds of a bond agreement would be set aside, not traded, and used to satisfy leverage requirements of the Fund's purported custodian, Merrill Lynch.

Arbab's Misrepresentations and Misappropriation

29. Contrary to Arbab's representations to investors, the Fund never existed, and, upon information and belief, there is no brokerage account existing in the name of the Fund, APCI, or APCM.

30. Arbab did not receive an undergraduate degree from UGA until May 2019, which was in cellular biology and genetics. He has never been enrolled in UGA's MBA program.

31. Arbab misappropriated for his personal use a significant portion of the investor proceeds he received for both investment in the Fund and for bond agreements.

32. Instead of being set aside, investor funds received in connection with the supposed bond agreements were not treated any differently from money meant to be invested in the Fund.

33. Between approximately May 2018, when Arbab began soliciting investments for the Fund, and January 2019, Arbab deposited all or most of the investor funds he received for the Fund and for bond agreements into his personal bank account or his personal brokerage accounts.

34. From his personal bank account, Arbab paid various living expenses, including more than $10,000 in cash withdrawals and more than $5,000 in hotel and nightclub expenses during a December 2018 gambling trip with friends in and around Las Vegas, Nevada.

35. In his personal brokerage account, he engaged in unprofitable options trading, losing more than $300,000 between September 2018 and March 26, 2019, when the account was closed the broker-dealer with a balance of about $350.

36. In January 2019, Arbab opened an APCI bank account into which he began depositing some, but not all, investor proceeds that he was receiving.

37.   In March 2019, with the help of a paid consultant who was also an investor, an additional bank account was opened in the name of APCM.  Arbab controlled both accounts and he began depositing into them some, but not all, investor proceeds he was receiving.

38.   From all of the accounts, he continued to divert investor funds for his own personal use, including bar and liquor store purchases, expenses at an adult entertainment club, and car trips via Uber.  In March and April 2019, he paid expenses of over $5,000 for two additional gambling trips to Nevada.

39.   Arbab used the balance of the funds he obtained to make Ponzi payments to prior investors, paying investors seeking to withdraw some or all of their investment using money received from subsequent investors.

40.   In addition, Arbab sometimes fooled investors into unwittingly sending Ponzi payments directly to other investors.

41.   Arbab accomplished this by telling an investor to send money via smartphone applications like Zelle, Venmo or Cash App to a recipient Arbab would falsely describe as a "partner" in the Fund or holding a position such as "fintech manager" of the Fund.

42.   In fact, the recipients were merely earlier investors seeking to withdraw their assets from the Fund.

43.   Because no securities trading occurred on behalf of the Fund, the weekly spreadsheets distributed by Arbab and the individual investor profiles on the Fund's website provided to investors by Arbab were completely fictitious.

Arbab's Fraudulent Offering Is Ongoing

44.   As recently as May 17, 2019, Arbab attempted to raise new money for the Fund.

45.   In addition, on or about May 11, 2019, Arbab contacted an existing investor seeking to withdraw from the Fund and from a bond agreement, and asked him to help Arbab recruit a particular potential new investor.  Text messages show that Arbab represented to the existing investor that if the existing investor were successful in recruiting the new investor, Arbab would give the existing investor all of the newly invested funds as payment towards the money owed to the existing investor.

## COUNT I—FRAUD
### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

### (ALL DEFENDANTS)

46.   Paragraphs 1 through 45 are hereby realleged and incorporated herein by reference.

47.   Between at least May 2018 and the present, Defendants Arbab, APCI and APCM, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities; all as more particularly described above.

48.   Defendants Arbab, APCI and APCM knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

49.   While engaging in the course of conduct described above, Defendants Arbab, APCI and APCM acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

50.   By reason of the foregoing, Defendants Arbab, APCI and APCM, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

**COUNT II—FRAUD**
**Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act**
**[15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]**

**(ALL DEFENDANTS)**

51.   Paragraphs 1 through 45 are hereby realleged and incorporated herein by reference.

52.   Between at least May 2018 and the present, Defendants Arbab, APCI and APCM, in the offer and sale of the securities described herein, by use of means and

instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

a.      obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

b.      engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

53.   By reason of the foregoing, Defendants Arbab, APCI and APCM, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III—FRAUD
**Violations of Section 10(b) of the Exchange Act and
Sections (a), (b), and (c) of Rule 10b-5 Thereunder
[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 (a), (b), and (c)]**

**(ALL DEFENDANTS)**

54.   Paragraphs 1 through 45 are hereby realleged and incorporated herein by reference.

55.   Between at least May 2018 and the present, Defendants Arbab, APCI and APCM, in connection with the purchase and sale of securities described herein, by

the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

    a.    employed devices, schemes, and artifices to defraud;

    b.    made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c.    engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

56.   Defendants Arbab, APCI and APCM, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, Arbab, APCI and APCM acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

57.   By reason of the foregoing, Defendants Arbab, APCI and APCM, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Sections (a), (b), and (c) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

## COUNT IV—FRAUD
### Violations of Sections 206(1) of the Advisers Act
### [15 U.S.C. § 80b-6(1)]

### (DEFENDANT ARBAB)

58. Paragraphs 1 through 45 are hereby realleged and incorporated herein by reference.

59. From at least May 2018 through the present, Defendant Arbab, acting as an unregistered investment adviser, used the mails and the means and instrumentalities of interstate commerce, directly and indirectly, employed devices, schemes and artifices to defraud one or more advisory clients and/or prospective clients.

60.  Defendant Arbab knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.  In engaging in such conduct, Defendant Arbab acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

61.  By reason of the foregoing, Defendant Arbab, directly and indirectly, has violated, and, unless enjoined, Defendant will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT V—FRAUD
### Violations of Section 206(2) of the Advisers Act
### [15 U.S.C. § 80b-6(2)]

### (DEFENDANT ARBAB)

62.  Paragraphs 1 through 45 are hereby realleged and incorporated herein by

reference.

63.  From at least May 2018 through the present, Defendant Arbab, acting as an

unregistered investment adviser, by the use of the mails and the means and

instrumentalities of interstate commerce, directly and indirectly, engaged in

transactions, practices, and courses of business which would and did operate as a

fraud and deceit on one or more advisory clients and/or prospective clients.

64.  By reason of the foregoing, Defendant Arbab, directly and indirectly, has

violated and, unless enjoined, will continue to violate Section 206(2) of the Advisers

Act [15 U.S.C. § 80b-6(2)].

### COUNT VI—FRAUD
**Violations of Section 206(4) of the Advisers Act**
**and Rule 206(4)-8 Thereunder**
**[15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8]**

**(DEFENDANT ARBAB)**

65.  Paragraphs 1 through 45 are hereby realleged and incorporated herein by

reference.

66.  By engaging in the conduct described above, Defendant Arbab, while

acting as an investment adviser to a pooled investment vehicle, by use of the

means and instrumentalities of interstate commerce and of the mails:

a. made untrue statements of material fact and omitted to state material facts

necessary to make statements made, in the light of the circumstances under which

-16-

they were made, not misleading, to investors and prospective investors in the pooled

investment vehicles; and

b. engaged in acts, practices, and courses of business that were fraudulent,

deceptive, and manipulative with respect to investors and prospective investors in

pooled investment vehicles; all as more particularly described above.

67.  By reason of the foregoing, Defendant Arbab has violated, and unless

enjoined, Defendant will continue to violate Section 206(4) of the Advisers Act

[15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully prays for:

An emergency, temporary, and preliminary order against Defendants:  (i)

restraining Defendants from their on-going Ponzi scheme and fraudulent offering

of securities; (ii) freezing the assets of Defendants; (ii) requiring an accounting by

Defendants of the use of proceeds of the fraudulent conduct described in this

Complaint; (iii) expediting discovery in this action; (iv) preventing document

concealment, destruction or alteration; and (v) requiring Defendants to show cause

why the Court should not issue a Preliminary Injunction and impose other relief

against them.

Further, the Commission respectfully requests that the Court enter a final

judgment:

**I.**

Making findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that Defendants committed the violations alleged;

**II.**

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C. § 80b-6(1), (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

**III.**

Ordering Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

**IV.**

Ordering Defendants to pay a civil penalty pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

## V.

Granting such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

### JURY TRIAL DEMAND

The Commission hereby demands a trial by jury as to all issues that may be so tried.

This 31st day of May, 2019.

Respectfully submitted,

*/s/M. Graham Loomis*
M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

W. Shawn Murnahan
Senior Trial Counsel
Georgia Bar No. 529940
murnahanw@sec.gov

Brian M. Basinger
Senior Counsel
Georgia Bar No. 595901
basingerb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel:(404) 842-7600
Facsimile:  (404) 842-7679